# UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

| | |
|---|---|
| **In re: KEVIN SHANNON** | Case No. 20-10372-BFK |
| **ROBERT COPYAK**, *et al.* | |
| *Plaintiffs* | |
| v. | Adv. Pro. # _____ |
| **KEVIN C. SHANNON,** | |
| *Defendant* | |

## COMPLAINT TO DETERMINE NONDISCHARGEABILITY OF DEBT

Robert E. Copyak and Dong Phuong Le ("Plaintiffs"), by undersigned counsel, file this adversary proceeding under 11 U.S.C. §§ 523(a)(2) and (a)(4) to except from discharge the debt that Kevin Shannon ("Mr. Shannon" or the "Debtor") owes to them. In support thereof, the Plaintiffs allege as follows:

### JURISDICTION AND VENUE

1. The Debtor commenced the above-captioned case by filing a voluntary petition under Chapter 7 of the Bankruptcy Code in this Court on February 5, 2020.

2. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 1334 and 157.

3. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I). The Plaintiffs consent to the entry of final orders and judgment by this Court.

4. Venue is proper pursuant to 28 U.S.C. § 1409(a).

## PROCEDURAL HISTORY

5. On May 8, 2019, Plaintiffs filed a complaint against the Debtor and two of his affiliated companies Shannon Remodeling & Restoration, LLC and DC Decks, LLC ("Corporate Defendants") in the Superior Court of Washington, D.C.

6. That case was stayed as to the Debtor pursuant to 11 U.S.C. § 362(a) by virtue of his bankruptcy filing in this Court.

7. On February 7, 2020 the Superior Court entered a consent judgment against the Corporate Defendants in the amount of $ 820,789.00.

## FACTS COMMON TO ALL COUNTS

8. On April 1, 2015, Plaintiffs signed a contract (the "Contract") with Shannon Remodeling & Restoration LLC (the "Company"). Mr. Shannon personally signed the Contract on behalf of the Company.

9. The Contract required the Company to remodel the Plaintiffs' home at 2819 13th Street NW in Washington, D.C.

10. The Contract included a build schedule that anticipated completion by December 1, 2015.

11. The work was not completed by the date.

12. On December 24, 2015, Mr. Shannon provided a revised completion date of May 9, 2016. The work was never completed.

13. The delays meant that the Plaintiff's home was uninhabitable for a long period of time and forced them to live in their basement unit, from which they had previously derived rental income, for a long period of time.

14. As the project spiraled out of control, Ms. Le was forced to make significant cuts to her working hours and salary in order to attempt to have Mr. Shannon complete the project.

15. At the time Mr. Shannon signed the Contract, neither he nor the Company were licensed to conduct business in the District of Columbia. Nor did Mr. Shannon or the Company ever become licensed.

16. Instead, Mr. Shannon agreed to work with another company, The Schmauder Group. The Schmauder Group had a license to work in the District of Columbia.

17. After the initial work began, Mr. Shannon refused to allow the Schmauder Group to participate in the process, or pay the Schmauder Group any money.

18. Over the course of the Plaintiffs' relationship with the Debtor, the Plaintiffs paid the Company $365,000 for construction services, but the Company never completed the project.

19. In fact, the services provided by Mr. Shannon caused significant damage to the existing structure.

20. On August 17, 2016 – well after Mr. Shannon had told the Plaintiffs the job would be finished – the Plaintiffs informed Mr. Shannon that major systems were incomplete. These included, inter alia, the HVAC system, gas lines and hot water heater. In fact, most of the major portions of the project were unfinished.

21. On September 11, 2016, the Plaintiffs informed Mr. Shannon that the Company had damaged their roof through incompetent construction.

22. Mr. Shannon communicated with Plaintiffs and assured them the work would be completed, but the work was not done.

23. The Plaintiffs had their home professionally inspected on December 28, 2016. The results of the home inspection revealed that Mr. Shannon's work was incomplete and substandard.

24. The Plaintiffs have had to pay, or will have to pay, amounts in excess of $144,731.80 to fix Mr. Shannon's substandard work.

25. Not only was his work incomplete and substandard, but neither Mr. Shannon, his companies, nor any of his subcontractors had pulled the required permits from the Department of Consumer and Regulatory Affairs, the relevant regulatory agency in the District of Columbia.

26. In addition to failing to complete work as required, Mr. Shannon engaged in outright embezzlement.

27. Mr. Shannon took money from the Plaintiffs to purchase items that were to be placed into the Plaintiffs' home, including such things as HVAC equipment, windows, siding and masonry.

28. Overall, the Plaintiffs paid Mr. Shannon $365,000.00, consisting of a deposit of 44,481.06, which Mr. Shannon has not returned, and 320,518.94 for material and labor. Mr. Shannon failed to deliver $196,664.75 of labor and materials.

29. Mr. Shannon abandoned the project in October of 2016.

30. The Plaintiffs hired a new contactor to take over the construction job on their home.

31. On information and belief, Mr. Shannon took as personal funds all of the money that the Plaintiffs paid to the Company.

32. On information and belief, Mr. Shannon did not have the proper corporate structure in place to limit his personal liability for the Plaintiffs' damages.

33. Mr. Shannon was at all times aware that neither he nor the Company was capable of performing the services he represented he could complete.

34. His false representations to the Plaintiffs were designed to deprive the Plaintiffs, and did in fact deprive them, of their money.

35. Mr. Shannon knowingly converted the Plaintiffs' funds to his own.

**COUNT I-MONETARY DAMAGES FOR VIOLATING D.C. CODE § 28-3904(e)**

36. The Plaintiffs incorporate by reference the allegations of paragraphs 1 through 35.

37. The Debtor is a merchant as defined by D.C. Code § 28-3901(a)(3) because he was providing services to the public in the ordinary course of business.

38. Plaintiffs are consumers as defined by D.C. § 28-3901(a)(2) because they provided economic demand for the Debtor's business.

39. The Debtor represented to Plaintiffs that he and the Corporate Defendants had the ability, knowledge and skill to perform the work specified and contemplated by the Contract.

40. This ability, knowledge and skill were material to the Contract as Plaintiffs would not have entered into the contract had they not believed that the Debtor did in fact possess the requisite ability, knowledge and skill to perform or manage the work specified and contemplated by the Contract.

41. The Debtor knew at the time of the representations to Plaintiffs that he did not have the requisite ability, knowledge and skill to perform the work specified and contemplated by the Contract.

42. The Debtor's misrepresentation of his ability, knowledge and skill violated D.C. Code § 28-3904(e).

43. Because this was a violation the District of Columbia's consumer protection act, and it directly involved misrepresentation and fraud, the Debtor owes the Plaintiffs a debt in the amount of $241,145.81 and such debt is nondischargeable in this case.

**COUNT II-NONDISCHARGEABILITY FOR FRAUD UNDER 11 U.S.C. § 523(a)(2)(A)**

44. Plaintiffs incorporate by reference the allegations of paragraphs 1 through 43.

45. The Debtor represented to the Plaintiffs that he had the requisite ability, knowledge, and skill to complete the project.

46. The Debtor represented to the Plaintiffs that he would work with the Schmauder group – which was licensed in the District of Columbia – and that such an arrangement was legal and would not cause issue.

47. The Debtor's representations referenced in ¶¶ 45 and 46 above were material to the Plaintiffs' decision to hire Mr. Shannon and the Company.

48. The Debtor's representations referenced in ¶¶ 45 and 46 above were specifically intended to induce the Plaintiffs to hire Mr. Shannon and the Company.

49. The Debtor's material representations inducing the Plaintiffs to hire Mr. Shannon and the Company were false, and he knew that they were false at the time he made them.

50. The Plaintiffs relied upon such materially false representations to their detriment, and the Plaintiffs' reliance was justifiable.

51. As a result of the Debtor's material misrepresentations, the Plaintiffs suffered significant financial losses by paying the Company for work that Mr. Shannon never intended to complete.

52. The Debtor also represented to Plaintiffs that he would purchase materials with the funds he was given and that he would complete the project to code and in a specified amount of time.

53. The Debtor did not deliver the work he promised.

54. The Plaintiffs paid Mr. Shannon $320,518.94 for labor and materials. Mr. Shannon failed to deliver on labor and material worth $196,644.75. These failures included, but were not limited to:

    a. Mr. Shannon promised to obtain permits. No permits were obtained.

    b. Mr. Shannon promised to install HVAC systems. He did not install them.

    c. Mr. Shannon promised to install windows, interior doors, decking, exterior stairs, siding, and masonry. He did not do so.

    d. Mr. Shannon also purchased supplies and took money from the Plaintiffs he claimed was for fixtures such as cabinets and HVAC systems that he never delivered.

    e. Mr. Shannon did not complete the framing.

    f. Mr. Shannon did not complete the demolition work.

    g. Mr. Shannon did not install the warming board.

    h. Mr. Shannon never completed the plumbing work.

55. The Debtor's fraud directly benefited him financially and caused the Plaintiffs economic harm.

56. The consequential damages the Debtor's fraud caused to the Plaintiffs include but are not limited to:

    a. $120,562.28 in added carrying costs for the property,

    b. $98,000 in lost rental income,

    c. $109.50 in building permit fees,

    d. $25,366.32 in storage costs,

    e. $1,200.00 in roof repairs,

    f. $141,731.80 to fix Mr. Shannon's substandard work,

    g. $101,774.00 in lost earnings for Ms. Le.

57. Because the Debtor received the money through misrepresentation and fraud, the Debtor owes the Plaintiffs a debt in the amount of $729,889.71 and such debt is nondischargeable in this case.

### COUNT III-NONDISCHARABILITY FOR EMBEZZLEMENT UNDER 11 U.S.C § 523(a)(4).

58. Plaintiffs incorporate by reference the allegations of paragraphs 1 through 57.

59. The Debtor represented that the money paid by the Plaintiffs would be used by the Company for services, labor, and materials.

60. The services promised by Debtor or the Company were never delivered.

61. Most of the material and products the Debtor promised were never delivered.

62. Rather than using the Plaintiffs' funds for his Company to complete the Debtor's project, the Debtor personally took and used the money for himself.

63. The Debtor's embezzlement directly benefited him financially and caused economic harm to the Plaintiffs.

64. Because the Debtor received the money lawfully but then misappropriated it for his own benefit through fraud or deceit, the Debtor owes the Plaintiffs a debt in the amount of $241,145.81 and such debt is nondischargeable in this case.

WHEREFORE, the Plaintiffs respectfully ask that this Court declare the Debtor's debt to the Plaintiffs to be nondischargeable under 11 U.S.C. § 523(a)(4), and grant such other and further relief as it deems just and appropriate.

ROBERT COPYAK and DONG PHUONG LE
By counsel

 /s/Steven B. Ramsdell
Steven B. Ramsdell, VA Bar #33222
      Local Counsel
Tyler, Bartl & Ramsdell, P.L.C.
300 N. Washington St., Suite 310
Alexandria, VA 22314
(703) 549-5003
Facsimile (703) 549-5011
sramsdell@tbrclaw.com